Thank you. The first case this morning will be number 20-1007, Kenney v. American Board of Internal Medicine. We welcome counsel, although we wish we could see you live, we're happy to be doing this via Zoom. And with that said, Pounce Counsel, would you like to reserve some time for rebuttal? Yes, Your Honor, I'd like to reserve two minutes of my time for rebuttal. Okay, that's granted. I will keep track of time, and I suggest that you do so, too, so you don't get thrown off when we call it, okay? So you have a total of 15 minutes, and your opening argument will be 13, okay? Thank you.  May it please the Court? Good morning. My name is Philip Curley. I represent the Plaintiff's Appellants. Your Honors, the District Court went well beyond its purview when it dismissed with prejudice the Plaintiff's tying claims. There are five reasons that ruling should be reversed. First, the Court took it upon itself to restate the tying claims entirely. Plaintiffs allege that having first purchased certifications, they are forced later by ABIM to buy its maintenance of certification product, referred to by its acronym MOC and pronounced MOC, and that if they do not later buy MOC, their certifications are revoked. The District Court wrongly redefined the essence that put it, as the Court put it, as something plaintiffs never alleged, that in order to purchase certifications, quote, internists are forced to purchase MOC products as well. The District Court got it exactly backwards and then dismissed its own claim. Let me ask you a question about the tying claim, and you can help me. I thought the key issue here was single product versus separate products, and I want you to help me on how to think about this. Now, it seems to me that the objective of every internist is to be certified, and the ABIM has set up two ways to be certified depending on where the internist is in his or her career, right? Then the MOC, which keeps them, quote, unquote, certified or deemed certified as opposed to not certified. Now, the District Court said that there's one product, and that was because what the ABIM is selling is the certifications. What's the flaw in that approach, particularly when you look at the typical tying claim where there are two products, each of which have a separate effect on the market? Well, the flaw in that approach, Your Honor, I think, is that the test for separate products, of course, is whether there is separate demand, and ABIM sells two different products. Certification has always been a one-time snapshot assessment of postgraduate medical education and residency training. That's what it's been for the 90 years that it's been around. The MOC product, on the other hand — Let's leave it about that, but go ahead. The MOC product, on the other hand, is different. According to ABIM's own Form 990 filed with the IRS, MOC, quote, means something different, end quote, from certifications, and MOC is designed to help keep internists current. So that's the difference between the two products, and the history of the two products support separate demand. MOC is a continuing professional development product that has been sold separately from certifications, not only by hundreds of other vendors over the decades, but also by ABIM itself. But here's what I don't understand, Counsel. The complaint of the plaintiffs is we're not certified. If each of the plaintiffs that are named ended up being certified, there would be no issue here. So it seems to me that the certification is what's key. Tell me why that's wrong. Am I just thinking about this wrong? Well, each of the plaintiffs, in fact, Your Honor, are certified. They each purchase certifications, and then when they did not buy the MOC product, those certifications were revoked. And that's the tie. ABIM forces these four plaintiffs and internists, after certification was already bought, to purchase the MOC product, or they will revoke the certification. Now, certifications are, as we have alleged, an economic necessity for doctors. I'm not sure that's really disputed. There's case law to that effect that we have cited. So the situation we have here is we have ABIM, which has a – Wait, hold on, Counsel, before you go on. You say – I mean, are the internists really forced to buy this? Well, they are forced to buy it, Your Honor, by ABIM's policy revoking their certifications if they do not. And that's forcing because certifications are an economic necessity. They will lose their hospital admitting privileges, insurance coverage, malpractice coverage. So certifications and MOC are an economic necessity, and we pleaded that specifically and addressed that specifically in the complaint. So that's the nature of the forcing. And that, I think, is part of what was the difficulty with the decision below. I'm not sure that the judge really understood the nature of the forcing here because he believed that our time claim required that MOC be purchased at the time of the certification, and that's not the case. Well, I don't see that being a problem of the district court. I think you appreciated that, maybe not the nuance that you're believing there is. But in any case, my question is this. As we look at MOC, MOC involves courses of study, taking examinations, completing self-evaluations, and satisfying other requirements. Now, that shows that there's some reflection of skill and training that's involved, and it's not solely a reflection of the purchasing power impact. Now, when you look at it that way, how should that affect our antitrust analysis? Because it's not a pure product as you are asserting, it seems. Well, Your Honor, I do think it is a pure product. And those types of features that you mentioned, courses, evaluations, lectures, all of those are provided by other vendors. They're provided by Continuing Medical Education vendors, or CME. They are provided by clinics. The Mayo Clinic has its own series of courses that it offers to help keep internists current. Hospitals, especially major urban hospitals, have their own continuing professional development courses. So those features that you mentioned are not unique to ABIM's CPD product, are not unique to MOC. And, in fact, those features have been satisfied, and those needs have been satisfied by other vendors for decades without those other vendors selling certifications. And I think it's important to note here that ABIM sold three other MOC-type products in the 70s and 80s as stand-alone products, and they were not mandatory. They were voluntary. So that tells us a couple of things. First of all, ABIM itself has a history of selling those two products separately. And, secondly, it tells us that the only reason MOC is successful is because ABIM has now made it mandatory. If you do not buy MOC, then you lose your certification. Can I just ask you a related question? Do we have to ignore ABIM's argument that allowing internists forego MOC might ultimately decrease the quality of care internists give? Well, I certainly think at this stage you do, Your Honor. I think that's a business justification affirmative defense for which there's no record support. And the district court essentially adopted or embraced those types of business justification affirmative defenses of ABIM in reaching its decision. Now, we have alleged specifically in our complaint that there is no connection, after years of studies and research, there's no connection between MOC and any benefit to doctors, patients, or the public. So this case is not about standards. This case is about $100 million in fees that ABIM generates as a result of its tie. So that's a defense that ABIM is certainly free to raise, Your Honor, and I'm sure that it will. But it's not a defense that can be given conclusive effect at this early stage of the proceedings. Judge Chigaris, I wanted to move to RICO, if that's okay. Sure. Counsel, now on RICO, let's assume for the moment that bring the RICO claim, right? When I look at paragraph 135 of the amended complaint, after providing a list of the seven statements that you allege beneath that, the same or similar statements of fact and others to the same effect have been made by ABIM and its agents repeatedly over the years, in addition to appearing on the website. Now, obviously that speaks to the fraud part of your claim, and I want to talk about 9B's requirement of fraud with particularity. How is that statement in 135 not the antithesis of the particularity requirement of 9B requiring that fraud be pled with particularity, date, time, and place? Well, I think, first of all, in the paragraph preceding that, there is a specific reference to, if I recall correctly, to a statement made by the then president of ABIM, a date and source and location. But I think that the website — There's no specific date in paragraph 134. It says the summer of 99, which speaks to the lack of date, time, and place. I believe it does refer to the publication in which that statement was published. So I think it satisfies 9B, and I think the allegations with respect to the website do as well. Those are continuing statements that have been out in the public since it was posted on the website, and they're there today. So there's no mystery to ABIM what we are claiming the fraudulent misrepresentations are or when they were made and where. Well, but where in the complaint, if you say there's no mystery, where in the complaint do you allege that the plaintiffs read or heard these statements? Where do you allege that the plaintiffs' employers read or heard these statements? We do allege that, Your Honor. I don't have the specific paragraphs at my fingertips, but we do allege that the third parties, hospitals, and insurance companies heard those and believe those misrepresentations. And as a result, we're convinced to require insurance to buy the mock product. So it's your position that you've pled sufficiently and with sufficient particularity, date, time, and place? Yes, Your Honor. We believe we satisfied rule 9B. And, of course, that wasn't the basis of the decision below, although you're certainly free to raise the question now. I see I only have one minute left. I'm happy to answer more questions if you'd like to, but I would like to see that rebuttal if I could. Well, I actually have another one. Judge Greenaway, are you done with that line of questioning? I am. After you, sir, I'd like to ask a question on monopolization, but, of course, I'm happy to wait. No worries. I was just going to just jump back to no problem. Another question, a tying. You know, there's cases cited on franchises and all, but does the fact that ABIM is a professional organization matter here analytically? I don't think it does. There certainly is no exemption in the SHRM Act for professional organizations or associations, and I think the important point here is that ABIM is the uncontested monopoly supplier of certification. So it doesn't have just market power, it has monopoly power, and that's what gives it the ability to force interns to buy MOCs. So, no, Your Honor, I don't think that professional organizations, even assuming ABIM is one, I think it's more of a trade association and pursues its own interests and not the interests of the internist community or patients. But even assuming it were, I don't think that gets it off the hook. Okay. Judge Greenaway, go ahead. Oh, thanks so much. I just wanted to pick up on something Judge Chigares asked you in your comment. If the MOCs are not the equivalent of the MBPAS's MOC product and the CMEs, is there even an effect on the market? Well, I think there is, Your Honor. The effect is on the market for continuing professional development products. All of those products, the MOC product, the MBPAS product, and the CME products, those are all intended to help keep internists current. And different vendors, I guess, approach that in different ways. But that's the goal of all of them. So that is the market. And I think it does. I'm sorry? So all three of them, in your view, are vying for internists in the same market? Absolutely, Your Honor. They're all vying for the internist dollar to buy these products to help them keep current. So I had one last question on monopolization, if that's okay. Sure. Yes. Thanks. So just to focus on monopolization for a second, the district court assumed in its opinion that the market for the monopolization claim was the same market that the plaintiffs had alleged with the tying claim. So essentially that they're separate markets. Do you have any quarrel with that analysis? I don't, Your Honor. As we alleged, the market that is the subject of our claim, our Section 2 claim, is the MOC market. Now, the interesting thing about the MOC market is that it's a captive market. And although it is a CPD product, continuing professional development product, as a result of ABIM's tying and monopolization, it has created a captive market for that particular product, giving consumers here, the internists, no choice but to buy the MOC product. Well, how are the markets different? Is the market for the purpose of the monopolization claim different than the market for the purpose of the tying claim? No, Your Honor. The tied product is MOC for the tying claim. And the market that is the subject of the Section 2 claim is also the MOC market. Thank you. I just had another question. And maybe you can enlighten us on this. It seems that the district court and the parties have really spent a lot of time on the per se analysis. What about the rule of reason analysis? Is there any reason to resort to that? I don't think so, Your Honor. Although we did plead an alternative rule of reason account, but here and the Supreme Court and third circuit precedent is, I think, pretty clear. When the seller of the tying product has monopoly power, the anti-competitive effect, the injury is presumed, which makes it susceptible to a per se tie. We did plead an alternative rule of reason, and we believe we plead antitrust injury without having to presume it. But the monopoly that ABIM has is so strong, we believe per se treatment is appropriate. Thank you. Judge Greenway, anything more? Many more things, but no. Okay. Judge Nygard, do you have anything to ask? No, Judge Nygard. Both you and Judge Greenway have asked all the questions I had. Okay. Thank you. All right, counsel, thank you. We'll turn to appellee's counsel. Thank you. Good morning, and thank you, Your Honor. Leslie John, on behalf of the Appellee American Board of Internal Medicine. May it please the court. This case is about the right of the American Board of Internal Medicine to set its own standards for what it means when it says a physician is ABIM or board certified. Thirty years ago, in 1990, ABIM decided that it would require physicians to demonstrate  in order to maintain their board certifications. Now, appellants claim that they're entitled to lifetime certification because they would rather not take the periodic examinations, but that is not the product that they've bought. This is one of a handful of cases, this case, the Lazarus case, and the SEVA cases against certification organizations. And three different courts have all looked at these allegations, and each one has reached the same conclusion, that they simply don't amount to an antitrust claim, whether it be tying or monopolization or unjust enrichment, and they certainly don't amount to a RICO violation. And this is the only case in which that particular fraud claim has been asserted. Now, the parties agree on two key points. Appellants agree with ABIM that ABIM should not be prevented from determining its own standards. And the appellants also agree ABIM should not be required to accept any other continuous professional development or CPD product as a substitute for its certification or MOC. And those areas of agreement can be found in the appellant's opening brief at pages 10, 21, and 60. Now, those two areas of agreement show the fundamental flaws that are inherent in appellant's claim. The relief they are seeking here, that they no longer be required to have to participate in MOC to maintain their certifications. They ask that ABIM not revoke the certifications. But in fact, they could only get that relief if ABIM were forced to accept their standards or another organization's standards in lieu of its own. But fundamentally, that's not the product they bought and the only product ABIM has offered, which is board certification. And board certification that offered a limited time certification, which by its terms would expire unless the diplomat were to continue to take and pass periodic examinations to demonstrate his or her knowledge in the field. Can I ask you a question? I asked your adversary as well. Does the fact that ABIM is a professional organization or something like that matter analytically? It does matter analytically because I do believe the rule of reason would govern the analysis here. And so the rule of reason would require, as per se, that there be two separate products that there not be forcing. So in that respect, the test for tying is the same, whether it's per se or rule of reason. But what the rule of reason does is it also adds in another requirement. And that requirement is that, in fact, you show an effect on competition in the tied product market. And the effect on competition in the tied product market here, the tied product market is MOC or maintenance of certification. Now, in his argument, appellant's counsel confuses it because he says the tied product market is continuous professional development. But it's not. If you look at the allegations in the amended complaint, it's MOC. Continuous professional development is something that could be different. So, for instance, taking continuing medical education. And, in fact, ABIM accepts continuing medical education from any number of providers. That allegation can be found in the amended complaint. So here, if it's rule of reason, you have to show an effect in the tied market, which is MOC, not CPD. And that's something, quite frankly, the allegations in the amended complaint don't do. And I would just direct your attention to the cases of this court in the Massachusetts School of Law at Andover versus ABA, U.S. versus Brown University. Those cases quite clearly establish that rule of reason applies when considering rules adopted by professional societies. And the court went on to say, and this is in the Massachusetts School of Andover case, even when the behavior resembles conduct usually subject to a per se approach. So I do think it's rule of reason, as your honor has asked. One other point. You had said there are two things you agree on. In appellant's brief, page 17 in note seven, they say, ABIM doesn't contest for purposes of the motion to dismiss that it possesses monopoly power in the certifications. Is that true? Well, it's not a grounds that we, we don't concede that ground, but we don't raise that on our motion to dismiss. We raised the separate product and the forcing issues as well as the rule of reason issue on the motion to dismiss. We haven't raised that as a separate argument, but we don't concede it. Okay. Judge Greenaway, I'm sorry. No, no, no, please. Let's just go ahead. Yeah. Let's just talk about rule of reason. Not rule of reason RICO for a moment. Okay. So I asked your adversary about leading forward with particularity pursuant to nine B. And. And I said, just put aside standing for a moment. I know that the principal basis for the, the. District court's decision was standing, but. My, my inquiry is. Even if you get past standing. Is there a fraud played with particularity? Your adversary referred to paragraphs, one 33, one 34 and one 35. And I think there are a few paragraphs after that, that essentially lay out the fraud. Can you speak to the point of particularity, please? Yes. So I would submit respectfully that a fraud is not pled here with particularity. So looking, let's look at those particular. Paragraphs of the complaint. Paragraph one 34, the amended complaint talks about a 1999 newsletter. So we're supposed to believe that somehow. Every hospital. Every hospital. Pay your employer or other healthcare entity read a newsletter in 1999 when there are no allegations about who this newsletter was sent to, how it was disseminated. Disseminated and who considered it. And then you turn to paragraph one 35, which is the ABM website. Which contains statements such as MOC makes a difference. And there are no allegations to follow that up that make it plausible. So I would submit respectfully that. That again, every single hospital employer, healthcare provider or other entity in the healthcare. Industries somehow looks at considers. Let alone relies upon. And I would also submit respectfully that there are no. Conclusive statements that are on a BIM. Website. There are conclusory statements that somehow there is a campaign of misrepresentations, but none of the kinds of factual of airments to support that. Are found in the amended complaint. We don't know. How it is a BIM. If it all it does. It's not a BIM.   It's not a monolithic entity that communicates. With this vast chain. And in fact, the plaintiffs. In their reply brief, the appellants in the reply brief, make it clear. That hospitals are not a monolith. Monolithic entity that there are, you know, There are no details about how in fact, this massive fraud is supposedly perpetrated. And I, I think. It's most telling when it comes to the facts surrounding. Each of the four specific. I think it's most telling when it comes to the facts surrounding. Each of the four specific. Appellants in this case who claim that a hospital made it may have made a decision about their admitting privileges. And yet there are none of the details. About what that hospital considered. What process that hospital followed. We don't know anything that would allow us to conclude. So,   made a decision about their admitting privileges. In fact, that any of these entities were aware of any of these statements on a website, much less relied upon them. When making any decisions. Let me just jump to monopolization for a moment. Two questions on that. If, if we happen to disagree. With the district courts. Focus on MOC. And initial certification as one product. If we disagree with that, does that mean that. We have to reverse on the monopolization claim. No, I don't think so. Your honor, because for the monopolization claim. There has to be anti competitive conduct at its core. And there must be an abuse of monopoly power. And so for instance, let's, let's, let's look at the forcing issue. Here. The appellants of course, claim that they were forced to purchase MOC. But in fact, all of these appellants could purchase. And take the initial certification exam without ever later purchasing. Maintenance of certification. And in fact, one of the appellants, Dr. Manolo did exactly that. In fact, he has never. Taken an MOC exam. He's never paid any MOC. Fees. So there's simply no forcing here. And on top of that, if you look at the case law in cases involving professional certification, the courts have in fact recognized that certifying organizations that give like a BIM does a seal of approval, but don't do anything to constrain others to follow it, such as in this case, hospitals or employers. Does not violate the antitrust laws. And so fundamentally they're a monopolization is contingent on this concept of an abuse of monopoly power. And, and there is no such abuse of monopoly power. Excuse me. Oh, okay. Sorry. It also is contingent of course, on a finding of monopoly power in a relevant market. And here the relevant market that's alleged for purposes of this particular account is MOC. It's not continuous professional development and it's not certification. If you look at the amended complaint, it's maintenance of certification. And so there really is no adequate relevant market alleged, which of course is, is a grounds for just affirming the, the dismissal grounds that the third circuit has held in cases like queen city. You know, this court can and should, you know, affirm dismissals for failure to plead relevant markets. Could I just ask the follow-up there about forcing, how do we conclude that internists aren't forced to buy mock at this stage in the litigation in light of the allegations that internists can't successfully practice without certification and isn't the feasibility of practicing without certification, ultimately a question of fact. Well, I think you can first look to as the facts in this case. So for instance, Dr. Manolo, who, who never, who did purchase initial certification and never purchased maintenance of certification. I think that certainly shows that his purchase of initial certification was not contingent on the later purchase of maintenance of certification. So I think that is one way you can look at it. I think you can also look at it in the way that the second circuit indicated in the smugglers, not homeowners case, which is a case where, which looked at when you're entering into the, the transaction and you know that in fact, you're going to be required there. There are certain components parts of that entire transaction. And, and you know that up front and you voluntarily nonetheless enter into that contract that there is no force. What I'm talking about is it may not be so voluntary. If they want to make a living, they, are they forced to buy your product? You seem to say, no, they're not forced to, but is that essentially an issue of fact that's more appropriate for some summary judgment? I would suggest not because I think when courts look to forcing, they look at what is the situation at the time of the initial purchase. And at the time of the initial purchase here, ABIM had a program for certification and aspects of that program were initially passing your initial board certification exam. And then that that certification would expire after a set period of time, 10 years without, unless that diplomat passed subsequent examinations. And so when they upfront bought that product, they knew there would be a continuing obligation as part of the certification program that they would have to demonstrate. In fact, that they possess the requisite knowledge to hold themselves out and say, yes, I am ABIM or a board certified. So there is no forcing because there is the knowledge upfront at the time of purchase of what certification entails. And that was the periodic demonstration of knowledge. But I suppose that, that the, the, the most basic form of your argument is they, they don't have to go through ABIM to practice. Yes, your honor. So for instance, if you look at the amended complaint, the amended complaint is quite clear that board certification is not required to practice medicine in the United States. That is simply a function of state boards of medicine that license doctors. You only need a license in your state to practice medicine. Board certification is not required. Board certification is more like the stamp of approval that you can hold yourself out to have special qualifications. Some, some, some patients and employers look to that. Others do not, but it is not a requirement to practice medicine in any state in the United States, which is a fact that is pled in the, in the amended complaint. Well, but, but I mean, this, this does go to your market power. I mean, yeah, it's true. You don't need the ABIM certification, but is it really feasible not to have it in reality? And I think that the allegations, don't they say you, you, you, you most, a lot of places won't let you practice your, your malpractice rates are going to go higher. Reimbursements going to be an issue. So is it really feasible to practice without certification? And, and is that something that should be a subject of discovery as opposed to, you know, at this juncture with a motion to dismiss, to, to resolve? Well, well, many, I would submit many internists do in fact, practice medicine without a certification. And there are many things that might affect how much you're paid, what you're admitting privileges are things like where you attended medical school and, and, and many other factors, but it, it really comes back to you know, what is at issue in this case and whether in fact there is a tying claim and whether or not there is one product or two products. And that really goes back to the Supreme court test in Jefferson Parish about the character of demand and whether there is demand for the tied product in absence of the tying product. And here the appellants want to hold themselves out as being board certified. There is no separate demand for the tied product in absence of the tying product. And that's something that I think is, is, is something that you know, the court in Jefferson Parish makes clear. Justice O'Connor, when she expands on the words in that says that for products to be treated as distinct, the tied product must at a minimum be one that consumers might wish to purchase separately without also purchasing the tied tying product. And here there simply are no allegations of fact sufficient to move this case along to make a plausible case that there are in fact two products here because there is no consumers. There are no allegations showing there is demand to purchase the tied product without also purchasing the tying product. All right. Well, thank you counsel. Judge Greenway. Do you have anything more? No. Thank you, sir. Okay. And judge Nygard, do you have anything more? No, no, thank you. I have no questions. Okay. Thank you. All right. Thank you counsel and we'll hear the rebuttal now. I'm sorry. We can't hear you. You're on mute. Mute. We can't hear you. Yes. I was, uh, I didn't have my, my, uh, my clicker set there. Sorry. I apologize. Um, I think the questions that, uh, your honor's asked and the answers that were given, um, in almost every case, uh, uh, underscore underscore the questions of fact that exist in this case. Um, the via media via media case, a recent case from the seventh circuit that came down after the decision below, um, uh, found that, uh, both separate products and forcing are present complex issues of fact that, uh, we're not susceptible for resolution on summary judgment, much less than emotion to dismiss. Um, so, uh, another fact question that, uh, arose from your, your, um, from your inquiry was professional society, uh, is, uh, is ABIM even a professional society? Uh, uh, we don't believe it is. Um, but in any event, uh, there certainly is nothing in the, um, in the complaint that's, that speaks to that. That's another example of an affirmative defense that, that, uh, ABIM is trying to raise standards, professional society, uh, internists aren't keeping up all sorts of things that can only be resolved after discovery. Can I, can I go back one second? Is it, is it your fundamental point that the determination of separate products, single product is a question of fact? Uh, well, yes, it is your honor. It's, it, it, it, it depends on separate demand. And, uh, we, we certainly alleged, uh, numerous facts that support separate demand. Uh, ABIM is claiming that there's not separate demand outside of the alley outside of the allegations of the complaint. They haven't answered yet or, uh, or, uh, filed any affirmative defenses, but yes, separate products is a, is a fact question, uh, I believe as is, as is forcing. And that's what the district court did here. That was incorrect. It concluded that as a matter of law, there could only be one product and, uh, it shouldn't have arrived at that or, or any other conclusion, um, in our judgment. Uh, it, uh, irrigated to itself a determination of the ultimate fact issue, which is are the separate products. Uh, it was indifferent to our allegations that improperly weighed evidence. It explicitly made findings that use those, those words, uh, and, and accepted ABIMs, uh, affirmative defenses that are outside of the complaint. All those are in violation of the proper standards and ruling on a 12B6, a motion to dismiss. And, uh, we respectfully, um, uh, point out to the court that, uh, this is not a situation where only conclusive recitations of law or are pleaded or claims wrote elements are simply recited. Um, this is a highly detailed and factual complaint, and, and, and we are entitled to discovery and the right to prove our claim. So we, uh, respectfully ask that the district court, uh, be, uh, be reversed. Thank you, counsel. We thank both counsel for their excellent briefs and argument today. Oh, I'm so, uh, judge, did you have anything you wanted to tell? I have nothing. Thank you. Thank you, judge. No, I don't. Sorry. Um, uh, we will take the case under advisement. It's a very interesting case. And, uh, again, we'll take the case under advisement and ask that the clerk call the next case. Thank you.